UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

MICHAEL BROWN,           )
                         )
    Plaintiff,           )
                         )
v.                       )     No. 1:16-CV-40-RLJ-SKL
                         )
DANIEL WARREN and        )
FRANKLIN COUNTY,         )
                         )
    Defendants.          )

**MEMORANDUM OPINION**

This pro se federal prisoner's civil rights action under 42 U.S.C. §1983 is before the Court on a Motion for Summary Judgment filed by Defendants Daniel Warren and Franklin County, *see* Rule 56 of the Federal Rules of Civil Procedure; exhibits attached to the Motion; and a memorandum brief supporting the Motion [Doc. 34, Attachments 34-1 through 34-7, Doc. 35]. Plaintiff filed a response to Defendants' Motion under Federal Rule of Civil Procedure 56(d) [Doc. 40]. Defendants replied to that response [Docs. 41]. For reasons set forth below, the Court will **GRANT** Defendants' motion, will enter summary judgment in Defendants' favor, and will **DISMISS** this action.

I.    STANDARD OF REVIEW/RESPONSE

A.    **Summary Judgment Standard**

Summary judgment will be granted to the movant, as long as what is before the Court by way of cited materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers or other materials, demonstrate that there is no genuine dispute as to any material fact and that the movant

is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 323. The moving party does not have to offer evidence disproving the nonmoving party's claim but may carry its burden by showing an absence of evidence to support the nonmoving party's case. *Id.* at 325.

To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). A plaintiff facing the prospect of summary adjudication cannot "sit back and simply poke holes in the moving party's summary judgment motion," *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990); cannot rest on his pleadings or allegations; but instead, must present material evidence in support of those allegations. *Celotex Corp.*, 477 U.S. at 324. Bare contentions will not suffice. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 581-82 (6th Cir. 1992).

Summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. To put it differently, if a court

concludes that a fair-minded jury could not return a verdict in favor of a plaintiff based on the evidence presented, summary judgment should enter. *Liberty Lobby*, 477 U.S. at 251-52.

**B.      Rule 56(d) Response**

Plaintiff asserts in his Rule 56(d) response that he lacks access to facts, obtainable only through discovery, to justify opposition to the motion [Doc. 40]. In Plaintiff's supporting brief to his Rule 56(d) response, he asserts that Defendant Warren planted unidentified evidence to support the false charge he brought against Plaintiff [Doc. 40-1 at 4]. Plaintiff asks the Court to deny Defendants' dispositive motion and to recommend that Defendant Warren be investigated criminally for tampering with evidence and obstruction of justice based on his efforts to prosecute Plaintiff for a crime he knew to have been committed by someone else [*Id.* at 8].

First, a plaintiff invoking Rule 56(d) must show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). Plaintiff also must describe with "some precision the materials he hopes to obtain with further discover and exactly how he expects those materials would help him in opposing summary judgment." *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004) (quoting *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996)).

Plaintiff has appended his declaration to his Rule 56(d) response, in which he states that he knows, beyond a reasonable doubt, that Defendant Warren attempted to frame him for a crime committed by another individual [Doc. 40 at 3]. Plaintiff's declaration lacks any description, precise or otherwise, of the materials he hopes to discover and how he intends to use those materials in contesting Defendants" Motion. Indeed, Plaintiff states in his declaration that he already possesses knowledge to show that Defendant Warren tried to frame him for a crime committed by another individual.

Second, the Supreme Court has held that, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Defendant Warren is claiming entitlement to qualified immunity, and if he is so entitled, then this case should be dismissed before discovery proceeds.

Third, the Court lacks authority to grant Plaintiff's request to have a criminal investigation launched into Defendant Warren's alleged acts involving evidence planting or obstruction of justice. "There is no statutory or common law right, much less a constitutional right, to an investigation." *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007). Hence, Plaintiff has no constitutional right to initiate or compel the prosecution of others for their alleged unlawful actions. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Franklin v. Henderson*, 15 F.App'x 205, 207 (6th Cir. 2001) (citing *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989)).

For these reasons, the Court declines to grant Plaintiff discovery either to allow him to unearth facts of which he already is in possession (i.e., those upon which he constructed the Defendant-framed-me contentions) or to search for unidentified, allegedly-planted evidence used to prosecute him on Count 19 of his indictment. Notably, this case was filed nearly three years ago [Doc. 1]. Defendants' summary judgment motion was filed more than four months ago [Doc. 34]. The Court believes that Plaintiff has had more than sufficient time to construct a proper response to Defendants' motion for summary judgment. Therefore, the Court will decide Defendants' Motion for Summary Judgment without delay and hereby declines to allow Plaintiff utilize additional discovery before ruling on the Motion.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The two remaining claims on which Defendants move for summary judgment are Plaintiff's claims against Defendant Warren in his individual capacity for malicious prosecution and against Defendant Franklin County for its custom or policy that allowed Defendant Warren to maliciously prosecute defendants, including Plaintiff [Doc. 5, Screening Order at 1]. Defendants argue that they are entitled to summary judgment based on seven grounds: (1)-(2), (6) entitlement to absolute, municipal, and qualified immunity; (3) invalid theory of liability (i.e., respondeat superior); (4)-(5) failure to establish two elements (i.e., favorable-termination and damage) of the four-element tort of malicious prosecution and (7) no state action, as required to state a valid § 1983 constitutional tort [Doc. 34 at 1-2; Doc. 35 at 4-12].

Plaintiff in his response contests Defendant Warren's assertion of qualified immunity, arguing that his (Plaintiff's) right not to be subjected to malicious prosecution was clearly established at the relevant time. Plaintiff also insists that he has alleged facts sufficient to sustain his malicious prosecution claim because the "favorable termination" rule does not apply and because probable cause for the charge in Count 19 was manufactured and based on fabricated evidence. Plaintiff further maintains that Defendant Warren has failed to deny or to take a "sworn oath" that he did not lie to the Grand Jury or plant evidence against Plaintiff [Doc. 40 at 2].

The Court recites the facts surrounding Plaintiff's claims almost verbatim from its prior order denying summary judgment to Plaintiff [Doc. 28 at 3-5].

On April 30, 2012, Defendant Warren was working as a Drug Enforcement Agency Task Force Officer ("DEA TFO") and was involved in a controlled buy of crack cocaine through a Tennessee Bureau of Investigation Confidential Source ("CS") [Doc. 20 at 7]. As part of the task force, Defendant Warren set up drug transaction with the CS and an individual named Ferron

Flemming ("Flemming") [*Id.*]. The officers, including Tennessee Bureau Investigation Special Agent ("T.B.I. SA") Lewis and Defendant Warren, observed the CS purchase crack cocaine from Flemming, after which the officers collected approximately one-half ounce of crack cocaine [*Id.* at 8]. Defendant Warren prepared a report of the investigation, which stated that the CS observed Flemming going into a residence belonging to the Plaintiff, who is described as "[a] member of a crack cocaine organization located in the Fayetteville, TN area" [*Id.*].

On May 29, 2013, Plaintiff was indicted on three charges: Count 1—a conspiracy to knowingly and intentionally distribute five kilograms or more of a substance containing a detectable amount of cocaine and 280 grams or more of a mixture containing cocaine base; Count 19—a knowing and intentional distribution of a mixture and substance containing cocaine base on April 30, 2012; and Count 20—a knowing and intentional distribution of a mixture and substance containing cocaine base on December 20, 2012 [Doc. 11 at 2 (citing Case No. 4:13-cr-11, Doc. 15, Plaintiff's indictment)]. Count 19 and the incident of April 30, 2012, described above, are at issue in the present case.

On March 3, 2015, Plaintiff's attorney moved the court to disclose grand jury testimony on the basis that false or perjured testimony created a defect in the indictment [*Id.* at 3]. The United States then dismissed Count 19, and Plaintiff's attorney withdrew his motion to disclose grand jury testimony [*Id.*]. Plaintiff was found guilty of Counts 1 and 20 and was sentenced to life imprisonment for Count 1 and to a concurrent six years for Count 20 [*Id.*].

Plaintiff asserts that Defendant Warren gave false testimony to the Grand Jury "on or about May 29th 2013," by identifying Plaintiff as the person who committed a criminal act on April 30, 2012, even though Defendant Warren knew that the criminal act was committed by another individual [Doc. 1 at 3–4]. Plaintiff further asserts that Defendant Warren "deliberately,

6

intentionally, and without disregard [sic] for the truth initiated a false criminal charge against the Plaintiff regarding an incident that occurred on April 30, 2012" [Doc. 20 at 1]. Thus, Plaintiff's claim of malicious prosecution is based upon the allegation that Defendant Warren testified before the Grand Jury, and that "something must have went [sic] wrong in the Grand Jury in order for the Plaintiff to be charged with and indicted for the April 30, 2012 offense in light of Warren's investigative report which named another individual for that offense" [*Id.* at 1–2].

In support of this claim, Plaintiff states that Warren's investigative report provides that another individual committed the offense, and T.B.I. SA Richard Lewis testified that Plaintiff was not present at the drug buy on April 30, 2012 [*Id.* at 2]. Plaintiff maintains that "the Grand Jury transcripts themselves will show that Warren deliberately misled the Grand Jury concerning the April 30, 2012 incident thereby framing Plaintiff for a crime that he and another agent witnessed being committed by an individual who was not the Plaintiff" [*Id.*]. Plaintiff additionally maintains that Defendant Warren, as a Sheriff's Deputy, was an employee of Franklin County at all relevant times [*Id.* at 3]. Plaintiff asserts that Franklin County is liable for Warren's conduct under § 1983 as a result of the entity's official policy or custom allowing continued employment as a law enforcement agent after being convicted of violating an individual's civil rights [*Id.*]. Defendant Warren, according to Plaintiff's allegations, was convicted in 1995 of a § 1983 violation of an inmate's constitutional rights, while still being employed by the Franklin County Sheriff's Department [*Id*].

### III. LAW AND ANALYSIS

**A. Claim against Defendant Warren**

Plaintiff sues Defendant Warren in his individual capacity for malicious prosecution [Doc. 28 at 2, Doc. 5 at 1]. In support of his claim, Plaintiff argues that Defendant Warren deliberately

7

and intentional testified falsely to a federal grand jury about Plaintiff's commission of a crime of which Defendant knew Plaintiff to be innocent [Doc. 1 at 4]. Defendant Warren resists the claim by arguing that Plaintiff has not established two of the four elements that comprise a constitutional tort for malicious prosecution, thereby failing to state such a claim, that Defendant Warren enjoys absolute and qualified immunity from suit, and that Defendant Warren was not acting under state law in performing his duties as a Drug Enforcement Agency Task Force Officer.

The Court finds that the resolution of the issues presented is controlled by res judicata principles and that, based on this Court's prior decision, the law of the case doctrine applies here [Doc. 28]. Under that doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, (1983) (citing 1B J. Moore & T. Currier, ¶ 0.404 (1980)); *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 148 (2d Cir. 1999) (observing that law-of-the-case doctrine "limits relitigation of an issue once it has been decided"). "The law of the case is concerned with the extent to which law applied in a decision at one stage of litigation becomes the governing principle in later stages of the same litigation." *Waste Mgmt. of Ohio, Inc. v. City of Dayton*, 169 F. App'x 976, 985 (6th Cir. 2006) (quoting *Rezzonico*, 182 F.3d at 148).

"The doctrine precludes a court from reconsideration of issues decided at an early stage of litigation, either explicitly or by necessary inference from the disposition." *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1071 (6th Cir. 2014) (quoting *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006)). Because the doctrine "directs a court's discretion [but] does not limit the tribunal's power," a court may deviate from a prior decision if convinced that the decision "is clearly erroneous and would work a manifest injustice." *Arizona*, 460 U.S. at 618 n.8.

**1.      Malicious Prosecution**

As explained in the Court's prior order, a malicious prosecution tort under the Fourth Amendment consists of four elements: "(1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor" [Doc. 28 at 7-8 (citing *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010)]. The Court found that the first element was missing because Plaintiff had failed to show that a criminal prosecution was initiated against him and that Defendant Warren made, influenced or participated in the decision to prosecute [*Id.* at 9].

The Court explained that Plaintiff could not rely solely on false grand jury testimony to prove participation in the decision to prosecute [*Id.* at 9]. Though the Court pointed out that an allegation that a defendant officer's police report contained false statements could satisfy the first element, Plaintiff did not claim that Defendant Warren's police report contained any false statements [*Id.*] Instead, Plaintiff speculated that the mere fact that the police report did not identify Plaintiff as committing the crime proved that Defendant testified falsely before the Grand Jury [*Id.*]

Similarly, the Court found that Plaintiff had not satisfied the second element—lack of probable cause for the prosecution—because, generally, "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for a prosecution" [*Id.*]. The Court noted that an exception to the general rule exists in cases where a defendant "knowingly or recklessly present[s] false testimony to the grand jury to obtain the indictment," but observed that such exception was undercut by the rule enunciated in *Rehberg*

*v. Paulk*, 566 U.S. 356 (2012) (holding that a grand jury witness has absolute immunity from any § 1983 claim based on the witness's testimony, even if that testimony is false) [*Id.*].

The Court then cited to *King v. Harwood*, 852 F.3d 568 (6th Cir. 2017), a post-*Rehberg* Sixth Circuit decision, which held that a plaintiff may rebut the presumption that a grand jury indictment is evidence of probable cause. *Id.* at 587-88. The presumption is rebutted by showing that a law enforcement officer, in the course of setting a prosecution in motion, made false statements in an affidavit or an investigative report or fabricated evidence, where such statements and evidence are material to a plaintiff's prosecution and are not comprised solely of grand jury testimony [*Id.* at 10].

The Court examined Plaintiff's submissions, found no allegations that fell within the scope of *King*'s holding, ascertained that Plaintiff was relying solely on Defendant Warren's grand jury testimony to rebut the presumption arising from a grand jury indictment, and determined that the grand jury indictment was conclusive and unrebutted evidence of probable cause [*Id.* at 11-12]. *See DiPasquale v. Hawkins*, No. 17-4138, 2018 WL 4944824, at *5 (6th Cir. Oct. 12, 2018) (concluding that a plaintiff "has failed to state a plausible malicious prosecution claim, as he cannot overcome the probable-cause presumption of the grand-jury indictment").

The Court hews to its earlier findings and relies on its previous holding that Plaintiff has not established the requisite elements of a Fourth Amendment malicious prosecution tort. Defendant Warren's argument that Plaintiff has failed to state such a claim is well-founded and he is entitled to summary judgment on that ground.

**2.     Qualified Immunity**

The qualified immunity doctrine is designed to protect governmental officials from suit in their individual capacities where their conduct "does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) (holding that qualified immunity safeguards "all but the plainly incompetent or those who knowingly violate the law"). Qualified immunity means "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity is a means of balancing "'the need to hold public officials accountable when they exercise power irresponsibly' against 'the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Middaugh v. City of Three Rivers*, 684 F. App'x 522, 526 (6th Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

Qualified immunity is an affirmative defense and, once raised, a plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). In the summary judgment context, the "plaintiff must present significant probative evidence tending to support [his] version of the facts, *evidence* in which a reasonable jury could return a verdict for [him]." *Chappell v. City of Cleveland*, 585 F.3d 901, 913 (6th Cir. 2009) (emphasis in original).

"When a defendant asserts qualified immunity, a court must determine: "(1) whether the facts alleged by the plaintiff make out the violation of a constitutional right and (2) whether the right at issue was 'clearly established' at the time of the alleged violation." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (citing *Pearson*, 555 U.S. at 232). A court may consider either step first. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Pearson*, 555 U.S. at 236). "[I]f the plaintiff cannot make both showings, the officer is entitled to qualified immunity." *Brown v. Lewis*, 779 F.3d 401, 412 (6th Cir. 2015) (citing *Pearson*, 555 U.S. at 236). The Court must assume, in making the qualified immunity determination, that all record-supported allegations

presented by Plaintiff are true. *Bays v. Montmorency Cnty.*, 874 F.3d 264, 268 (6th Cir. 2017). A qualified immunity issue may be approached by determining initially whether the facts alleged make out a constitutional violation. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014).

Plaintiff insists, in his response to Defendants' motion for summary judgment, that his claim for malicious prosecution is undisputed [Doc. 40 at 1]. Plaintiff further maintains that Defendant Warren is not entitled to qualified immunity until Plaintiff secures discovery to show that Defendant engaged in criminal conduct by initiating the prosecution against Plaintiff for an offense Defendant knew was committed by another individual [*Id.* at 2]. Plaintiff's first argument is based on an incorrect reading of the record, including this Court's prior order, and his second one is irrelevant to the qualified immunity question. Moreover, the second argument involving Plaintiff's asserted need for discovery was addressed and resolved earlier in this instant Memorandum Opinion.

The Court has previously determined that Plaintiff failed to satisfy the requisite elements of a malicious prosecution claim [Doc. 28 at 12]. The Court also has concluded that Plaintiff has not alleged facts that establish a violation of a constitutional right and has not satisfied his burden of demonstrating that Defendant is not entitled to qualified immunity [*Id.* at 13].

Therefore, the Court additionally will grant Defendant Warren summary judgment based on his entitlement to qualified immunity. *Plumhoff*, 572 U.S. at 771-72 (explaining that qualified immunity is "an immunity from suit rather than a mere defense to liability").

3. **Absolute Immunity**

"The doctrine of absolute immunity for testimony is a shield to ensure that those individuals intimately involved in the judicial process are able to carry out their responsibilities without the constant threat of vexatious lawsuits, not a sword allowing them to trample the

statutory and constitutional rights of others." *Spurlock v. Satterfield*, 167 F.3d 995, 1003–04 (6th Cir. 1999). "[A]bsolute immunity is the exception rather than the rule, and has traditionally been reserved for those actors intimately associated with the judicial phase of the criminal process." *Id.* at 1003 (citation and quotation omitted). "It is well-settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings . . . no matter how egregious or perjurious that testimony was alleged to have been." *Id.* at 1001 (citing *Briscoe v. LaHue*, 460 U.S. 325, 330–31 (1983)). Similarly, and relevant to the issue to hand, grand jury witnesses are entitled to absolute immunity from suit based on their grand-jury testimony. *Rehberg*, 566 U.S. at 367 (reasoning that "[t]he factors that justify absolute immunity for trial witnesses apply with equal force to grand jury witnesses").

As explained in the Court's prior order, Plaintiff's allegations that Defendant maliciously prosecuted Plaintiff for a crime that Defendant knew was committed by another person were constructed entirely on Defendant's supposed false grand jury testimony [Doc. 28 at 9]. The Court referred to the absolute immunity provided in *Rehberg* for grand jury testimony [*Id.*], but it did not explicitly hold that Defendant was entitled to absolute immunity for his grand jury testimony. As explained earlier in this Memorandum Opinion, the law of the case doctrine also includes issues that were decided by inference from a court's earlier disposition of those issues.

The Court finds that its earlier citation to *Rehberg* for its holding that grand jury witnesses enjoy absolute immunity for their testimony, by inference, resolved the issue of Defendant's absolute immunity for his allegedly false grand jury testimony. *DiPasquale*, 2018 WL 4944824, at *6 (finding that "[t]he complaint before us adequately alleges only a claim based on [Defendant]'s grand jury testimony, and that claim is barred by absolute immunity").

13

Defendant Warren is entitled to and will be granted summary judgment based on his absolute immunity from suit for his allegedly false grand jury testimony.

**4.      Federal/ State Action**

Finally, Defendant Warren maintains that he was involved in the investigation and prosecution of Plaintiff solely as a part of his assignment to a task force operated by the United States Drug Enforcement Administration and not under the Franklin County Sheriff's Office's policies or customs [Doc. 34 at 1]. Defendant Warren has submitted a declaration to this effect [*Id.* at 7]. Defendant therefore asserts that because he was acting under federal law, not state law, he has no § 1983 liability to Plaintiff [*Id.* at 1, Doc. 35 at 12].

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. *Black v. Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998); *see also Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere"). In other words, a plaintiff must plead facts sufficient to show: (1) the deprivation of a right, privilege, or immunity secured to him by the United States Constitution or other federal law; and (2) that the individual responsible for such deprivation was acting under color of state law. *Gregory v. Shelby Cnty.*, 220 F.3d 433, 441 (6th Cir. 2000). "[A] public employee acts under color of state law . . . while exercising his responsibilities pursuant to state law." *West v. Atkins*, 487 U.S.42, 49–50 (1988) (citations omitted).

Suits for damages filed against federal officers in federal court based on alleged constitutional violations must be brought pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), a judicially-created remedy. *See Carlson v. Green*, 446 U.S. 14, 18-

19 (1980) ("*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right."). A *Bivens* action is considered to be a counterpart to a § 1983 suit against state officials who infringe on a plaintiff's federal constitutional or statutory rights. *See Butz v. Economou*, 438 U.S. 478, 503-04 (1978); *Vector Research, Inc. v. Howard & Howard Attorneys P.C.*, 76 F.3d 692, 698 (6th Cir. 1996). A plaintiff who sues under *Bivens* must make a similar showing, i.e., the deprivation of a right conferred by the Constitution or federal law by a person acting under color of (federal) law. *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015).

Plaintiff acknowledged in a prior motion that *Bivens*, rather than § 1983, might be the appropriate vehicle for review and redress of his claims against Defendant Warren [Doc. 32 at 1]. *See Sawaf v. Lexington-Fayette Ubran Cnty. Gov't*, No. 5:17-CV-00405-JMH, 2018 WL 4688725, at *2 (E.D. Ky. Sept. 28, 2018) ("[C]ourts have long held that relief against federal officers for federal constitutional violations can only be pursued through an implied right of action as recognized by *Bivens*[.]").

While the Court is not obliged to convert Plaintiff's § 1983 claim against Defendant Warren to a *Bivens* claim, *see Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003) ("There lacks any authority in support of [Plaintiff]'s blanket proposition that a court must convert a Section 1983 claim asserted against federal officials to one asserting *Bivens* violations."), if the Court exercised its discretion to do so, *see Majors v. City of Clarksville*, 113 F.App'x 659, 660 (6th Cir. 2004) (construing § 1983 action against "police officers who were acting as deputized Task Force Agents by the [DEA]" as "in reality a *Bivens* claim under the Fourteenth Amendment"); *Pike v. United States,* 868 F. Supp. 2d 667, 679 (M.D. Tenn. 2012); *Peterson v.*

15

*Taliaferro*, No. 2:12-CV-13729, 2013 WL 6328826, at *5 (E.D. Mich. Dec. 5, 2013), it would make no difference to the outcome of Defendants' dispositive motion.

It would not alter the Court's decision on Defendants' Motion for Summary Judgment because a *Bivens* defendant may assert a qualified immunity defense, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), and because the Court has already determined that Defendant Warren is entitled to both qualified and absolute immunity based on his grand jury testimony. *See Morgan v. Discenza*, No. 215CV02332SHMCGC, 2016 WL 11478135, at *5 (W.D. Tenn. Feb. 9, 2016) ("Various courts that have considered the question have likewise determined that the same absolute immunity applies in a *Bivens* action when law enforcement officers are alleged to have testified falsely before a grand jury, as Plaintiff alleges here."), *report and recommendation adopted*, No. 15-02332, 2016 WL 3512271 (W.D. Tenn. June 22, 2016). Furthermore, a *Bivens* claimant must show a constitutional violation and the Court has found that Plaintiff has not sustained his claim against Defendant Warren for a malicious prosecution in violation of the Fourth Amendment.

**B.     Claim against Defendant Franklin County**

The precise claim against Defendant County is that it had a custom or a policy that allowed Defendant Warren to maliciously prosecute defendants, including Plaintiff [Doc. 28 at 2].

The law is clear that "municipalities and other local government units [are] to be included among those persons to whom § 1983 applies [and they] therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). As the Court pointed out in its prior order, "a municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'" *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 694). "A municipality may be liable for a constitutional violation caused by individuals when those individuals acted pursuant to an

official policy of the municipality." *Voyticky v. Vill. Of Timberlake*, 412 F.3d 669, 679 (6th Cir. 2005).

"A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess*, 735 F.3d at 478 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). Plaintiff's claim that Defendant County had custom or a policy that allowed Defendant Warren to maliciously prosecute defendants falls within the fourth category (i.e., that the County had a custom of tolerating the violation of federal rights).

However. "a custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims." *Id.* (citing *Thomas*, 298 F.3d at 433)). Presumably, to make this showing, Plaintiff maintains that, in 1995, in a § 1983 civil rights case [Doc. 20 at 3], Defendant Warren was "held responsible by a jury in Federal Court for violation of another individuals [sic] constitutional rights prior to this current incident" [Doc. 7 at 6]. Plaintiff does not describe the act or omission for which Defendant Warren purportedly was held liable, and nothing in Plaintiff's submissions indicates that malicious prosecution or a similar claim played any role whatsoever in the prior unidentified § 1983 case. In addition, a single case with no identified similarities to Plaintiff's claimed constitutional violation does not constitute a pattern.

Thus, Plaintiff's municipal liability claim falls short in its initial showing.

Furthermore, as the Court observed in its prior order, municipal liability can only exist if a constitutional violation has occurred. *Voyticky*, 412 F.3d at 679 (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)); *see also Bukowski v. City of Akron*, 326 F.3d 702, 712–13 (6th

Cir. 2003) ("[T]he determination that the City's officials did not violate the plaintiffs' constitutional rights resolves the claim against the City as well."); *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983.").

Because, as the prior order held, Plaintiff has not established his underlying Fourth Amendment claim for malicious prosecution, he has not shown a constitutional violation. Absent a constitutional violation, Defendant County is not liable to Plaintiff.

Finally, in the prior order, the Court observed that "a municipality may not be sued under § 1983 for an injury inflicted solely by its employees or agents" [Doc. 28 at 14]. Though the Court did not go further and explicitly reject any theory of respondeat superior upon which Plaintiff relied as a basis for municipal liability, it did so implicitly.

The Court now does so explicitly: "[A] municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691.

## IV. CONCLUSION

In view of the above law and analysis of Plaintiff's claims, Defendants' motion for summary judgment, [Doc. 34] will be **GRANTED** and this case will be **DISMISSED** for failure to state a claim against them and because Defendant Warren enjoys qualified and absolute immunity from this suit. 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2). Lastly, the Court has carefully reviewed this case pursuant to 28 U.S.C. § 1915(a) and will **CERTIFY** that any appeal from this action would not be taken in good faith. 28 U.S.C. § 1915(a)(3). Therefore, should Plaintiff file a notice of appeal, he must also submit either: (a) the five hundred and five dollar ($505.00) appellate filing fee or (b) a motion for leave to appeal in forma pauperis, with the appropriate documentation. 28 U.S.C. § 1915(a)(2).

A separate order of dismissal will enter.

**IT IS SO ORDERED.**

ENTER:


                                    s/ Leon Jordan
                                United States District Judge